IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

333 Constitution Avenue NW

Washington, DC 20001

Main Phone: (202) 354-3000

**CARIBBEAN BASIN POWER AUTHORITY CORPORATION**

**Petitioner,**

**Mailing and Contact Address:**

**Adam Rousselle Sr. 267-254-6107**

[arousselle@caribbeanbasinpower.org](mailto:arousselle@caribbeanbasinpower.org)

**Middle Street Suite 201 Sullivans Island SC 29482**

**Headquarters: 1654 Calle Tulipan STE 100, SAN JUAN, PR, 00927**

v.

**FEDERAL EMERGENCY MANAGEMENT AGENCY (FEMA)**

500 C Street SW, Washington, DC 20024

**COR3 (CENTRAL OFFICE FOR RECOVERY, RECONSTRUCTION, AND RESILIENCY)**

Torre Chardón, Suite 1105 350 Carlos Chardón Street
San Juan, PR 00918

**Respondents.**

**CASE NUMBER** _____

Case: 1:24−cv−03198 JURY DEMND
Assigned To : Unassigned
Assign. Date : 10/31/2024
Description: Pro Se Gen. Civ. (F−DECK)

**Contact Information:**

1. **District of Columbia**
    - **Civil Process Clerk**
      U.S. Attorney's Office for D.C.
      601 D Street, NW
      Washington, DC 20530
      **Main Phone:** (202) 252-7566

# PETITION FOR WRIT OF MANDAMUS AND CONDITIONAL CLASS ACTION CERTIFICATION REQUEST

**RECEIVED**

OCT 31 2024



Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

# Contents

**Contact Information:** .................................................................................................................1
I.   INTRODUCTION ...............................................................................................................3
II.  JURISDICTIONAL BASIS AND VENUE FOR NAMING COR3 AS A CO-RESPONDENT ...................3
III. PARTIES ............................................................................................................................4
IV.  FACTUAL BACKGROUND ................................................................................................4
V.   LEGAL GROUNDS .............................................................................................................7
VI.  INJURIES AND DAMAGES .................................................................................................7
VII. RELIEF SOUGHT ................................................................................................................8
VIII. CONDITIONAL CLASS CERTIFICATION REQUEST ............................................................10
IX.  EVIDENCE OF INJURIES AND DAMAGES .........................................................................11
X.   CONCLUSION .................................................................................................................12
XI.  LIST OF EXHIBITS:..........................................................................................................12

**To the Honorable Judges of the United States District Court:**

# I. INTRODUCTION

The Caribbean Basin Power Authority (CBPA), a non-profit corporation, respectfully petitions this Court for a Writ of Mandamus to compel the Federal Emergency Management Agency (FEMA) and COR3 to process its applications for public assistance and hazard mitigation funding under the Robert T. Stafford Disaster Relief and Emergency Assistance Act (Stafford Act) and the Bipartisan Budget Act (BBA). CBPA's transformative Project Equity connects the mainland power grid to Puerto Rico and is critical to modernizing Puerto Rico's energy infrastructure, ensuring reliable power for its residents, and directly aligning with mandates of both the Stafford Act and the BBA. Despite meeting all statutory requirements, CBPA's applications have been improperly denied, requests to FEMA from CBPA for relief, appeal and arbitration have all gone unanswered. Accordingly, this petition seeks judicial relief due to FEMA and COR3's improper denial of CBPA's applications based on non-statutory criteria, a failure to adhere to statutory provisions, and procedural missteps that have hindered CBPA's access to necessary public assistance.

This petition is filed by the Caribbean Basin Power Authority (CBPA), acting on behalf of both itself and Puerto Rico residents as a conditional class, seeking judicial intervention to compel FEMA to fulfill its statutory obligations. Thus, ensuring they receive equitable access to disaster recovery resources, fair pricing for dependable and secure power, and the same level of support and security that every American deserves under the law.

This Writ is not about placing blame but about restoring a system that should provide, for all citizens, just as we would expect for ourselves, our communities, and our children. CBPA, as both an advocate for the residents and an organization impacted by FEMA's inaction, does not seek any portion of the $60 billion in damages for itself; rather, it requests the court to instruct FEMA to compensate Puerto Rico residents for the financial harm and extended risk they have endured due to FEMA's delay.

# II. JURISDICTIONAL BASIS AND VENUE FOR NAMING COR3 AS A CO-RESPONDENT

This Court has jurisdiction over the Federal Emergency Management Agency (FEMA), a federal agency headquartered in Washington, D.C., under 28 U.S.C. § 1331, as the claims presented arise under federal law. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) as FEMA's principal place of business is within this district.

The Caribbean Basin Power Authority (CBPA) respectfully asserts that the U.S. District Court for the District of Columbia has jurisdiction over both the Federal Emergency Management Agency (FEMA) and the Central Office for Recovery, Reconstruction, and Resiliency (COR3) in this matter. COR3, acting as the designated administrator of FEMA's federal disaster recovery program in Puerto Rico, carries out FEMA's mandates and policies, distributing federal disaster funds and executing FEMA's directives on the island. Given COR3's primary role as an executor of FEMA's disaster assistance program, its actions and inactions directly reflect FEMA's obligations and compliance with federal statutes.

By naming both FEMA and COR3, CBPA seeks to address interconnected actions and administrative decisions that are governed by FEMA's oversight. The claims against FEMA and COR3 are interdependent and require this Court's consideration of FEMA's statutory responsibilities, as well as COR3's administrative actions as FEMA's agent. Exercising jurisdiction over both parties within this venue promotes judicial efficiency, prevents duplicative litigation, and ensures consistent and fair adjudication of CBPA's claims. Therefore, CBPA requests that the Court recognize COR3's role as FEMA's administrative agent and exercise pendent jurisdiction over COR3 as a co-respondent in this federal action.

## III.   PARTIES

1. **Pro Se Litigant Caribbean Basin Power Authority Corporation**
   A Puerto Rico Domestic Non-Profit Corporation. Adam Rousselle Sr. Chief Executive Officer Headquarters Address 1654 Calle Tulipan STE 100, San Juan, PR, 00927. Mailing Address 2113 Middle Street Suite 201 Sullivans Island, Sc 29482
2. **Defendant Federal Emergency Management Agency**
   500 C Street SW
   Washington, DC 20024
3. **Defendant COR3 (Central Office for Recovery, Reconstruction, and Resiliency)**
   Torre Chardón, Suite 1105
   350 Carlos Chardón Street
   San Juan, PR 00918

## IV.   FACTUAL BACKGROUND

1. **Applications Submitted and Attempts for Assistance**
   Since April 2024, CBPA has submitted multiple applications under the Stafford Act for disaster relief and hazard mitigation funding, including on 5/14/24, 7/23/24, 7/30/24, 8/8/24, and 9/1/24. CBPA's application specifically invoked eligibility under both the Stafford Act's provisions for disaster recovery and the BBA's provisions for critical infrastructure modernization, recognizing Puerto Rico's need for resilient and modernized energy systems. On September 5, 2024, FEMA Region 2 Administrator David Warrington issued a denial, asserting that CBPA's Project Equity was ineligible

for funding and that FEMA lacked authority to fund CBPA's project, disregarding both the Stafford Act and BBA provisions CBPA identified. CBPA immediately sought clarification on the legal basis for this decision. On September 19, 2024, FEMA's legal representative, Casadonte, confirmed that this denial lacked foundation in any specific statutory or regulatory language, underscoring a procedural deviation from both the Stafford Act and Bipartisan Budget Act provisions.

To resolve these non-statutory determinations, CBPA provided FEMA with a comprehensive appeal and specific demands for relief in an October 10, 2024, letter to FEMA Headquarters. In this letter, CBPA requested:

- **Direct FEMA Processing:** Due to the 114 days of delay and repeated reports to FEMA, CBPA requested that FEMA initiate direct processing of the application, justified under Section 621(h)(2) and (3) and invoking corrective action authority under Section 621(g) to remedy the failure to process the application.
- **Critical Infrastructure Designation under Section 603:** CBPA asserted that the proposed undersea electricity cable connecting Puerto Rico's infrastructure to mainland systems aligns with critical infrastructure mandates under Section 603 of the Stafford Act, particularly by integrating Fort Buchanan, a federally designated critical facility, into the project.
- **Arbitration and Appeal Rights:** CBPA formally requested arbitration under Section 423(d)(1) of the Stafford Act, as well as an appeal under Section 423(a), to ensure an unbiased review of its eligibility.
- **Contact Information for Writ of Mandamus:** Anticipating further inaction, CBPA requested contact information to facilitate filing a writ of mandamus if FEMA continued to refuse action.
- **Meeting for Rural Community Advocacy:** Under Section 326 of the Stafford Act, CBPA requested an immediate meeting with an advocate to address the unique needs of Puerto Rico's rural areas in ongoing recovery efforts.
- **Presidential Audit Demand:** CBPA formally demanded a Presidential audit under 42 U.S.C. 5161 to investigate COR3's handling of FEMA disaster assistance applications and address reported issues of misconduct within FEMA Region 2.

Despite these explicit requests for relief, FEMA did not respond to CBPA's October 10, 2024, letter.

Subsequently, on October 11, 2024, COR3 confirmed CBPA's ineligibility based on FEMA's denial letter of September 5th, rather than any statutory criteria, raising serious concerns of improper denial and procedural error. Having exhausted all known administrative remedies, CBPA now seeks judicial intervention through this Writ of Mandamus.

2. **Extenuating Circumstances: PR100 Study**
   The PR100 Study, released in March 2024, only 60 days before CBPA's application, identified Puerto Rico's electrical infrastructure as outdated and highly vulnerable. The

5

study emphasizes that "Puerto Rico's electric system is a complex, isolated system…that lags far behind national standards" (PR100 Full Report, 2024, p. 14). And" Key Findings: Infrastructure Interdependency Assessment: Communications, Water and Transportation Infrastructure are highly dependent on energy." Considerations: Infrastructure Interdependency Assessment; Improve redundancies in service connections and supply nodes to eliminate single points of failure, especially for elements designated critical supply nodes; To remain aware of the hazards and risks posed by interdependencies, perform additional and continual assessments of these systems and their interconnections as they evolve; Coordinate changes across infrastructure domains using a collaborative, systems-of-systems approach. (PR100 Full Report, 2024 p. 539-540)

Of note: The BBA specifically provides in C (1) that repair or replacement of undamaged components is eligible if required to restore the critical service function of a facility or system to an approved industry standard, and in C(2), that the pre-disaster condition of components is irrelevant to determining the eligible scope of work. These provisions directly support CBPA's Project Equity, designed to bring Puerto Rico's infrastructure up to national standards. Despite COR3's involvement in the PR100 Study and their awareness of these systemic vulnerabilities, COR3 did not adhere to the requirements of the BBA or the Stafford Act, underscoring the need for this Court's intervention to ensure compliance with federal standards.

### 3. Context of Procedural Delays and Fear of Persecution

On July 30, 2024, CBPA submitted an application to Deputy Administrator Erik Hooks. On August 27, CBPA informed Deputy Administrator Hooks that Manuel Laboy, Director of COR3, expressed a "fear of persecution" if he processed CBPA's application, effectively leaving CBPA's eligibility unresolved and contributing to ongoing delays. CBPA also reported threats to its CEO's safety to FEMA, but no protective action was taken. These factors underscore the need for neutral judicial oversight to ensure CBPA's right to a fair and statutorily compliant application process.

### 4. Misinterpretation of the Stafford Act

FEMA Region 2 Administrator David Warrington's interpretation of the Stafford Act, conveyed on September 5, 2024, incorrectly stated that FEMA lacked authority to fund CBPA's project, directly contradicting statutory language and FEMA's established eligibility criteria (FEMA Citations for Denial, 2024).

### 5. Denial of Honest Services

Statements from COR3 indicate that non-statutory criteria were applied in CBPA's application review, resulting in a rejection that does not align with the statutory eligibility framework of the

Stafford Act. This approach bypasses the Act's equal access provisions, which guarantee fair consideration for all eligible applicants, and suggests a need for judicial oversight to ensure adherence to statutory standards (Response to FEMA, 2024).

## V. LEGAL GROUNDS

1. **Violation and Misinterpretation of the Stafford Act**
   FEMA's denial of CBPA's applications contravenes the Stafford Act's Sections 403, 406, and 428, which mandate FEMA support to eligible applicants for disaster recovery. CBPA's application explicitly cited these sections, demonstrating the project's alignment with statutory obligations for disaster resilience. FEMA's misinterpretation and failure to adhere to statutory requirements resulted in an improper denial, disregarding CBPA's legitimate reliance on the Stafford Act's provisions.

2. **Violation and Misinterpretation of the Bipartisan Budget Act (BBA)**
   Section 20601 of the BBA authorizes FEMA to fund projects that modernize critical infrastructure without restrictions on pre-existing conditions. CBPA's application clearly referenced this provision, aligning CBPA's Project Equity's goals with the BBA's statutory focus on resilience and modernization. FEMA's improper denial reflects a misinterpretation of the BBA, violating its mandate and disregarding the clear statutory intent CBPA outlined in its application.

3. **Denial of Honest Services**
   Statements by Laboy and Warrington indicate the use of non-statutory criteria, which obstructed CBPA's application and failed to uphold impartial management of disaster relief funds as required under federal law. This improper denial, not grounded in the statutory requirements of the Stafford Act or BBA, potentially constitutes a breach of honest services as defined under **18 U.S. Code § 1346**, which mandates the ethical and unbiased performance of public duties.

## VI. INJURIES AND DAMAGES

**1. Denial of Access to Public Assistance**
FEMA's improper denial exacerbates Puerto Rico's energy insecurity, directly harming both CBPA and the island's residents, who remain underserved by outdated infrastructure.

**2. Financial Harm**
By improperly denying CBPA's applications, FEMA has deprived CBPA of access to critical funds, resulting in significant financial setbacks.

**Quantified Financial Damages for Delays**

Quantified by FEMA at a rate of $174.00 per resident per day, the financial impact of FEMA's continued inaction on CBPA's BCA-backed application imposes substantial harm on Puerto Rico residents. FEMA's pattern of disaster mitigation discrimination against Puerto Rico applicants documented by the U.S. Commission on Civil Rights in 2022 continues to exacerbate harm. CBPA requests that FEMA be required to compensate Puerto Rico residents at this rate for each day of delay from May 14, 2024, to September 5, 2024, and for each day following this court's filing date until FEMA complies.

# VII.    RELIEF SOUGHT

1. Order FEMA and COR3 to process CBPA's applications for public assistance and hazard mitigation funding in a non-discriminatory manner, adhering to the statutory requirements of the Stafford Act and BBA.

2. Ensure immediate compliance with statutory obligations by reviewing the procedural handling of CBPA's application by COR3 and FEMA to ensure compliance with statutory obligations and transparency.

3. Facilitate a meeting between CBPA and FEMA's Inspector General to review procedural adherence, including any procedural irregularities CBPA has encountered.

4. Provide injunctive relief to prevent further delays and ensure that CBPA's applications receive fair and timely consideration.

5. Grant expedited treatment: Given the 114-day delay and Puerto Rico's ongoing needs, CBPA requests that the Court expedite the application process.

6. Demand that FEMA pay damages in an amount that FEMA itself calculated as the Value Of Unit Of Service ($/Person/Day) of $174.00 in the amount of $65,062,060,164.00

This amount covers damages from the delay period (from May 14 to September 5) and request ongoing damages per day after the court filing if the delay persists.

- Formula: $174.00 x 114 days x 3,279,799(the number of residents listed in the CBPA Application)

Rationale:

For every day that FEMA delays action, Puerto Rico's residents live under the persistent threat of a disaster that could be prevented through proper mitigation efforts. The calculated daily loss of $174 per resident not only represents a denial of essential services and protections to the

people of Puerto Rico but also reflects a growing financial strain on the U.S. Treasury. FEMA's inaction effectively creates a 'man-made disaster'—a metaphorical hurricane of escalating Treasury loss that impacts all American taxpayers, whose funds are ultimately directed toward disaster recovery costs that could have been avoided.

CBPA, under its statutory mandate, exists to protect lives and reduce the financial burden on the U.S. Treasury by supporting sustainable and resilient infrastructure. FEMA's failure to act on CBPA's compliant applications thus extends beyond Puerto Rico, imposing unnecessary costs on all American citizens, whose resources are drained by preventable losses. This ongoing delay contradicts FEMA's fundamental mission and ultimately endangers both the well-being of Puerto Rican residents and the financial health of the nation.

Therefore, CBPA urges this court to recognize that FEMA's inaction not only risks lives in Puerto Rico but also imposes daily financial damages on the Treasury, borne by all U.S. citizens, due to FEMA's failure to fulfill its statutory obligations.

CBPA, acting as a representative for both itself and Puerto Rico residents, respectfully requests that the court instruct FEMA to fulfill its statutory duties by providing financial compensation directly to the residents of Puerto Rico. This compensation, totaling approximately $65,062,060,164.00 reflects damages owed to the residents themselves for each day FEMA's failure to act has left them exposed to significant risk.

While CBPA itself is impacted by FEMA's noncompliance, CBPA seeks no financial gain from this portion of the claim. Instead, CBPA aims to ensure FEMA meets its legal responsibilities to protect both the organization's mission and the public it is obligated to serve.

CBPA respectfully seeks this Court's intervention to ensure that Puerto Rican American families have fair access to safe, reliable infrastructure and secure, affordable power, consistent with what any American community expects and deserves under law. This action is not about assigning blame but about ensuring the resources, dignity, and opportunities that allow all Americans to thrive.

7. **Motion for Expedited Consideration**

CBPA requests expedited consideration of this Writ of Mandamus and Conditional Class Certification. This request is justified by:

1. **Imminent Public Safety Threats**: Every day of delay exacerbates harm to Puerto Rico residents by denying access to essential safety protections and creating further risks in disaster-prone areas.
2. **Public Interest**: This case aligns with FEMA's mandate to provide equitable assistance, with substantial implications for public trust and policy adherence.

3. **Irreparable Harm and Judicial Economy**: Delays in FEMA's response compound financial damages and life safety risks, impacting residents and complicating future disaster recovery efforts.

CBPA's established preparedness and dedicated financial resources ensure effective and timely advocacy for Puerto Rico's residents.

# VIII. CONDITIONAL CLASS CERTIFICATION REQUEST

**Introduction of Conditional Class Certification Request**
Plaintiff, Caribbean Basin Power Authority (CBPA), respectfully requests conditional class certification under Federal Rule of Civil Procedure 23 on behalf of all residents of Puerto Rico affected by FEMA's actions. The Benefit-Cost Analysis (BCA) submitted by CBPA quantifies harm at $174.00 per resident per day, defining a common, calculable loss experienced by each resident.

**Justification for Conditional Class Certification**

1. **Quantified Financial Damages for Delays**
    - FEMA's ongoing delays result in financial damage calculated at $174 per resident per day, per FEMA standards. Since FEMA's decision impacts all residents equally, the numerosity and commonality requirements under Rule 23 are satisfied.

2. **Discrimination as a Basis for Class Representation**
    - FEMA's discrimination against Puerto Rican applicants, documented in the 2022 U.S. Commission on Civil Rights Report, exemplifies the need for CBPA to advocate for the class. CBPA has experienced these discriminatory practices firsthand, establishing its suitability to represent the class in seeking equitable disaster assistance.

3. **Statement of Financial, Subject Matter, and Ethical Capacity for Class Representation**
    - CBPA is a non-profit organization with demonstrated experience before federal agencies, including a 2015 victory in the FERC court. As a disinterested entity, CBPA prioritizes public welfare over profit, ensuring alignment with the residents it represents. CBPA's allocated funds and established litigation fund enable it to access subject matter experts as needed.

4. **Ensuring CBPA Retains Control as Lead Plaintiff**
    - To maintain continuity in representation, CBPA requests designation as the conditional lead plaintiff. CBPA's experience, statutory compliance, and dedication position it as the primary advocate for Puerto Rico residents, ensuring effective, informed, and focused representation.

## IX. EVIDENCE OF INJURIES AND DAMAGES

CBPA has provided evidence of the direct harm caused by FEMA's improper denial of assistance:

1. **Energy Insecurity and Infrastructure Deficiencies**

The 2021 FEMA-PREPA 10-Year Infrastructure Plan and the PR100 Study (March 2024) both outline Puerto Rico's critical energy vulnerabilities, emphasizing an urgent need for modernization to prevent cascading infrastructure failures. CBPA's Project Equity is designed to implement these recommended improvements through adherence to national Consensus-Based Codes, Standards, and Specifications, consistent with FEMA's Public Assistance Policy FP-104-009-11. CBPA's Project Equity's goal is to maintain baseline power across six strategic locations, preventing cascading failures that compromise critical systems, including electric power, water, telecommunications, emergency services, and healthcare.

Additionally, the National Institute of Standards and Technology's (NIST) roadmap for resilient lifeline systems—endorsed by FEMA and other federal agencies—addresses the importance of interdependent infrastructure and the socio-economic impacts of prolonged outages. CBPA's Project Equity is directly aligned with these objectives, ensuring sustained power even during extreme events, which would mitigate further disruptions across Puerto Rico's interconnected lifeline systems.

According to FEMA's own Benefit-Cost Analysis standards, CBPA's Project Equity offers a benefit-to-cost ratio of 9.67:1, with projected benefits to the U.S. Treasury valued at $156 billion compared to the $16 billion project cost. Delays in addressing these issues impose daily financial consequences, estimated at $1.3 million based on project costs alone, compounding Puerto Rico's energy insecurity and increasing future disaster recovery costs.

**Conclusion**: FEMA's adherence to statutory requirements would have begun to mitigate these identified risks, aligning CBPA's project with the resilience and disaster recovery goals defined in the Stafford Act and the Bipartisan Budget Act.

2. **Financial Setbacks to CBPA**

CBPA's financial records and project budgets demonstrate reliance on FEMA and COR3 funding, including the statutorily provided Direct Administrative Cost (DAC) fund, to implement CBPA's Project Equity. The denial of access to these critical funds has led to substantial financial setbacks, as the DAC fund is specifically intended to accelerate mitigation efforts by covering eligible administrative expenses. Under the Disaster Recovery Reform Act of 2018 (DRRA), which amended the Stafford Act, these management costs are defined as any administrative expenses necessary to complete a specific project, with reimbursement rates established for this purpose.

**Conclusion**: Adherence to statutory requirements would have enabled access to these necessary funds, aligning CBPA's project with the resilience and disaster recovery goals mandated by the Stafford Act and Bipartisan Budget Act.

# X.   CONCLUSION

For these reasons, CBPA respectfully requests that this Court issue a Writ of Mandamus compelling FEMA and COR3 to fulfill their statutory obligations under the Stafford Act and BBA. Prompt action on CBPA's applications will ensure equitable disaster response and demonstrate federal commitment to Puerto Rico's resilience.

**CBPA has exhausted all administrative remedies, making judicial relief necessary.**

# XI.   LIST OF EXHIBITS:

1. Communications between CBPA, FEMA, and COR3.
   a. The 5/14/2024 Application
      i. 5_14_24_Email Cover to Warrington
      ii. Application DR_4339-PR HMP CBPA 5_9_24_W_BCA
      iii. National Security Memorandum on Critical Infrastructure Security and Resilience _ The White House
      iv. FERC Grants ATI Petition EL23-14-000
      v. FEMA Continues to Streamline Recovery in Puerto Rico, Enhances Resilient Outcomes and Equitable Solutions
      vi. Comments and Intervention by Caribbean Basin Power Authority in PP-502 4 15
      vii. PN704916-DR4339PR - IWBCA HMP Package Inland Wide BCA
      viii. Project Equity Short Presentation 5_14_2024

   b. 8_27_24_CBPA_FEMA_Deputy_Director_Hooks_Persecution_Threats_Compromised_Official
   c. 8_27_24_CBPA_COR3_1123hrs_Laboy
   d. 9_5_24_Warrington_CBPA_Denial
   e. 9_12_24_CBPA_Warrington_Asking_Clarification_On_9_5_email
   f. 9_19_24_Casadonte_Legal_Reply_To_Clarification_Request
   g. 10_10_24_CBPA_Demand_To_FEMA
   h. 10_11_24_COR3_CBOA_Denial
2. 2022-statutory-report-fema DISCRIMINATION
   a. 2022 U.S. Commission on Civil Rights Report
3. Relevant Sections of the Stafford Act and FEMA policies.
   a. eCFR __ 44 CFR 206.201 m_o
   b. eCFR __ 44 CFR 206.202
   c. eCFR __ 44 CFR 206.203 Subpart G (a-d)
   d. eCFR __ 44 CFR 206.220 – General
   e. eCFR __ 44 CFR 206.221 Subpart H (a-i) Definitions
   f. eCFR __ 44 CFR 206.223 Subpart H (a_b) -- General work eligibility responsive
   g. fema_pappg-v3.1-archived_policy_5-4-2018
   h. fema_stafford_act_2021_vol1
   i. Section_20601_BBA_FP-104-009-5
4. PR 100 Full Eng
5. SUPREME_COURT_CHEVRON_22-451_7m58 (Supreme Court Decision in Loper Bright Enterprises v. Raimondo

